**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

SEAN P. MCGANN,

       Plaintiff,

  v.

COLLINGSWOOD POLICE
DEPARTMENT, et al.,

       Defendants.

Civil No. 10-3458 (NLH/KMW)

**OPINION**

**APPEARANCES:**

Sean P. McGann
4532 Walnut Street
Apartment B10
Philadelphia, Pennsylvania 19139
    *Pro Se*

Dean R. Wittman, Esquire
Matthew B. Wieliczko, Esquire
Zeller & Wieliczko, L.L.P.
Woodcrest Pavilion
10 Melrose Avenue
Suite 400
Cherry Hill, New Jersey 08003
    *Attorneys for Defendant Borough of Collingswood improperly*
    *pled as Collingswood Police Department*

**HILLMAN, District Judge**

    This matter comes before the Court by way of a motion [Doc.

No. 57] for summary judgment pursuant to Federal Rule of Civil

Procedure 56 made by Defendant Borough of Collingswood

(hereinafter, "the Borough").[1]  The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, the Borough's motion for summary judgment is granted.

## I.   <u>JURISDICTION</u>

In this case, Plaintiff alleges violations of his federal constitutional rights and brings his claims pursuant to 42 U.S.C. § 1983.[2]  The Court exercises jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331.

## II.  <u>BACKGROUND</u>

The Court previously set forth the detailed factual background of this case in its Opinions dated June 28, 2011 and March 22, 2012.  (<u>See</u> Op. [Doc. No. 38] 3-7, June 28, 2011; Op. [Doc. No. 55] 3-7, Mar. 22, 2012.)  Accordingly, the Court sets

─────────────────────

1.  Although Plaintiff named the Collingswood Police Department as a Defendant in this action, the proper Defendant is the Borough of Collingswood because the Collingswood Police Department is an agency of the municipality which cannot be sued independently.  (Op. [Doc. No. 38] 1 n.1, June 28, 2011) (citing <u>Padilla v. Twp. of Cherry Hill</u>, 110 F. App'x. 272, 278 (3d Cir. 2004)).  Accordingly, any references to the Collingswood Police Department or its members in the remainder of this Opinion shall be construed to refer to Defendant Borough of Collingswood.

2.  As noted in the Court's June 28, 2011 Opinion, "Plaintiff does not specifically cite Section 1983, but that statute poses the proper vehicle to advance his federal claims, constitutional in nature and alleging violations to his civil rights. Therefore, the Court ... construe[s] Plaintiff's claims as Section 1983 claims."  (Op. [Doc. No. 38] 2 n.1, June 28, 2011.)

forth here only those facts relevant to the present motion for summary judgment.

Plaintiff is a former police officer of the Collingswood Police Department (hereinafter, "the Department") who served in that capacity for approximately eight years before he was arrested on December 22, 2006.  (See Def.'s Statement of Material Facts Not In Dispute [Doc. No. 57-3] (hereinafter, "St. of Mat. Facts"), ¶ 1) (citing Pl.'s Am. Compl. [Doc. No. 40] ¶ 1). Plaintiff's original complaint in this action was filed with this Court on July 21, 2010.  With respect to the Borough, the Court previously dismissed all of Plaintiff's Section 1983 claims arising from the alleged misconduct of the Department relating to Plaintiff's December 22, 2006 arrest, the search of Plaintiff's apartment that same day, and an official misconduct charge, on that basis that these claims were time-barred by the statute of limitations. (Op. [Doc. No. 38] 10, June 28, 2011.)  The Court found that Plaintiff's claims accrued in or around December 2006 and were barred by the two-year statute of limitations because Plaintiff did not file his complaint until the summer of 2010. (Id.)

As it relates to the present motion, the Court also dismissed Plaintiff's Section 1983 claims against the Borough regarding allegations that members of the Department harassed Plaintiff, in part, by filing multiple harassment charges against

Plaintiff for later attempting to retrieve his personal belongings collected during the 2006 search of his apartment. (Id. at 17-18.)  At that time, because Plaintiff made only "vague allegations" regarding this purported harassment and failed to "articulate with requisite specificity and clarity in what ways he was harassed, how many times he was harassed, or whether those acts constitute[d] a violation of his legal rights[,]" these claims were dismissed without prejudice.  (Id.)  The Court therefore granted Plaintiff leave to amend his allegations of purported harassment by members of the Department when Plaintiff attempted to retrieve his personal belongings, as well as the alleged failure of the Department and Defendant Camden County Prosecutor's Office to return his personal possessions from the December 2006 search.  (Id. at 18-19.)

As directed by the June 28, 2011 Opinion and Order, Plaintiff filed an amended complaint with the Court on July 26, 2011.  (See generally Pl.'s Am. Compl. [Doc. No. 40].)  In the amended complaint, Plaintiff asserts that after his employment with the Department ended, the Department refused to provide Plaintiff with personal items stored in his police locker such as cigar lighters, a silver wristwatch, and a pair of shoes.  (Pl.'s Am. Compl. ¶ 1.)  Plaintiff alleges that after he was released from jail in 2008, he began contacting the Department to obtain his belongings and was advised that his possessions were with the

4

Camden County Prosecutor's Office, not the Department.  (<u>Id.</u> ¶ 2.)  Plaintiff represents that in February and April of 2009 a Complaint-Warrant and three Complaint-Summonses were issued against him for harassment (hereinafter, "the Spring 2009 harassment complaints") regarding his contact with the Department in attempting to collect his belongings.  (<u>Id.</u> ¶¶ 3-4.)  Despite the issuance of the Spring 2009 harassment complaints, Plaintiff maintains that he did not harass anyone.  (<u>Id.</u> ¶ 3.)

According to Plaintiff, on April 13, 2009 while Plaintiff was being held at the Hall of Justice in Camden, New Jersey on an unrelated violation of a temporary restraining order, Lieutenant Glenn Prince of the Department advised Plaintiff that he "was under arrest for harassment."[3]  (<u>Id.</u> ¶ 5.)  Several days later, on April 15, 2009, Plaintiff alleges that he appeared in court on the Spring 2009 harassment complaints at which time Lieutenant Prince allegedly "threatened to make matters worse if [Plaintiff] did not accept a local ordinance violation."  (<u>Id.</u> ¶ 9.)  Plaintiff also asserts that Lieutenant Prince ensured Plaintiff that Prince would assist in the return of Plaintiff's belongings so long as Plaintiff only contacted Lieutenant Prince but no other members of the Department.  (<u>Id.</u>)  Plaintiff agreed to this

---

3.  Plaintiff alleges that Prince told Plaintiff, "'You better take the deal the judge gives you or you will never see the light of day again.  You do remember what happened in solitaire [sic], don't you?"  (Pl.'s Am. Compl. ¶ 5.)

arrangement, but alleges that he still had not received his personal items five months later in November of 2009.[4]  (Id. ¶¶ 9-10.)  In November of 2009, Plaintiff alleges that he twice contacted Thomas J. Garrity, the Chief of Police for the Department.  (Id. ¶¶ 12, 14.)  Plaintiff's November 14, 2009 contact with Chief Garrity related to Plaintiff's assertion that officers of the Department "were slandering" Plaintiff's name. (Id. ¶ 12.)  Based on Plaintiff's contact with Chief Garrity on November 14, 2009, another Complaint-Summons for harassment was issued to Plaintiff on November 21, 2009.  (Id. ¶ 13.)

Based on these amended allegations, Plaintiff asserts Section 1983 claims against the Borough for violations of his Fourth Amendment rights.  Specifically, Plaintiff alleges that the Borough violated his constitutional rights by "charging [Plaintiff] with harassment numerous times and not having the probable cause to prepare such a summons, for alleged crimes that would not have been committed within their jurisdictions for [Plaintiff] reside[s] in another State."  (Pl.'s Am. Compl. 4.) Plaintiff further contends that his Fourth Amendment rights were violated by the Borough when members of the Department had Plaintiff "handcuffed, searched, and seated inside of a holding

---

4.  It appears the seized items were returned to Plaintiff on June 9, 2010. (See Def.'s Statement of Material Facts Not In Dispute [Doc. No. 57-3] (hereinafter, "St. of Mat. Facts"), ¶ 18) (citing Pl.'s Am. Compl. [Doc. No. 40] ¶ 18).

cell, within the jurisdiction other that their own, without probable cause or [a] warrant, with the purpose to deprive [Plaintiff] of liberty, causing [Plaintiff] to feel intimidated and fearful of police."  (Id.)  In conclusion, Plaintiff contends that he was "wrongfully arrested, maliciously prosecuted and ... [has] fallen victim to a conspiracy."  (Id. at 5.)

## III. <u>DISCUSSION</u>

In the present motion, the Borough seeks the entry of summary judgment in its favor on Plaintiff's remaining claims against it for false arrest and malicious prosecution.[5]  Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and

---

5.  In the complaint, Plaintiff mentions in passing that he "ha[s] fallen victim to a conspiracy."  (Pl.'s Am. Compl. 5.) However, Plaintiff does not make any allegations regarding this alleged conspiracy such as who conspired with whom, or for what purposes.  It appears to the Court that any such claim is based merely on Plaintiff's own suspicion and speculation.  Therefore, to the extent the amended complaint may be construed as alleging a claim for conspiracy to deprive Plaintiff of his constitutional rights, the Court finds that Plaintiff cannot maintain such a claim.  See, e.g., Gera v. Pennsylvania, 256 F. App'x 563, 565-66 (3d Cir. 2007) (affirming district court dismissal of the plaintiff's claims that attorney general and district attorney conspired against the plaintiff to deprive him of his constitutional rights where it appears the claims were not based in fact but upon the plaintiff's own suspicion and speculation); Severino v. Div. of Youth and Family Servs., No. 11-3767, 2011 WL 5526116, at *3 (D.N.J. Nov. 14, 2011)  ("To the extent that the plaintiff asserts any discernible allegations concerning a conspiracy on the part of the defendants to deprive him of federal rights, such allegations appear to be based on mere speculation and thus are without merit.") (citing Gera, 256 F. App'x at 565-66.)

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which

8

it believes demonstrate the absence of a genuine issue of
material fact." (citation omitted); see also Singletary v. Pa.
Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although
the initial burden is on the summary judgment movant to show the
absence of a genuine issue of material fact, 'the burden on the
moving party may be discharged by "showing" -- that is, pointing
out to the district court -- that there is an absence of evidence
to support the nonmoving party's case' when the nonmoving party
bears the ultimate burden of proof.") (citing Celotex, 477 U.S.
at 325).

Once the moving party has met this burden, the nonmoving
party must identify, by affidavits or otherwise, specific facts
showing that there is a genuine issue for trial.  Celotex, 477
U.S. at 324.  A "party opposing summary judgment may not rest
upon the mere allegations or denials of the ... pleading[s.]"
Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)
(internal quotations omitted).  For "the non-moving party[] to
prevail, [that party] must 'make a showing sufficient to
establish the existence of [every] element essential to that
party's case, and on which that party will bear the burden of
proof at trial.'"  Cooper v. Sniezek, 418 F. App'x 56, 58 (3d
Cir. 2011) (citing Celotex, 477 U.S. at 322 ).  Thus, to
withstand a properly supported motion for summary judgment, the
nonmoving party must identify specific facts and affirmative

evidence that contradict those offered by the moving party.
Anderson, 477 U.S. at 256-57.

**IV.   ANALYSIS**

Here, Plaintiff's Section 1983 claims for false arrest and
malicious prosecution apparently stem from the issuance of
several harassment complaints against Plaintiff in February,
April, and November of 2009 by members of the Department.  By way
of background, following Plaintiff's December 2006 arrest,
members of the Department and allegedly, the Camden County
Prosecutor's Office, conducted a search of Plaintiff's apartment
and retrieved various personal possessions including clothing and
a binder containing Plaintiff's police awards and certifications.
(St. of Mat. Facts ¶¶ 2-3.)  As Plaintiff asserts in the amended
complaint, after subsequently being released from jail in 2008,
Plaintiff began contacting various members of the Department in
an attempt to collect the items retrieved from the search of his
apartment in 2006.  (Id. ¶ 4.)

According to the Borough, however, beyond simply requesting
the return of his belongings when he contacted the Department,
Plaintiff also began "repeatedly making threats and other demands
in an effort to be reinstated to his former position as a
Patrolman with the ... Department, notwithstanding his arrest and
subsequent conviction for Official Misconduct."  (Id. ¶ 6.)  As a
result of Plaintiff's "repeated, [and] unwanted" communications

10

with the Department, the Department sent Plaintiff a certified letter on January 30, 2009 requesting that Plaintiff cease and desist from engaging in any further telephonic, electronic, or written communications with the Department or other employees of the Borough.  (Id. ¶ 7; see also January 30, 2009 Letter from Captain Richard Sarlo, Ex. B to Prince Aff. [Doc. No. 57-2] 1.)

The January 30, 2009 letter stated in pertinent part:

> This letter shall serve as official notice
> regarding unwanted communications.  Effective
> immediately you are no longer welcome to contact
> or attempt to contact;
> ✓    ANY MEMBER OF THE COLLINGWOOD POLICE
>       DEPARTMENT
> ✓    ANY PUBLIC OFFICIAL OF THE BOROUGH OF
>       COLLINGSWOOD
>
> Communication is described as but not limited to;
> ✓    TELEPHONIC COMMUNICATION
> ✓    ELECTRONIC MAIL, INSTANT MESSAGING
> ✓    WRITTEN COMMUNICATION
> ✓    DIRECT CONTACT WITH ANY OF THE AFOREMENTIONED
>       INDIVIDUALS.

see also January 30, 2009 Letter from Captain Richard Sarlo, Ex. B to Prince Aff. [Doc. No. 57-2] 1.)  The January 30, 3009 letter went on to advise Plaintiff that "[a]ny violation of the aforementioned terms will result in the issuance of Criminal Complaints."  (Id.)  The letter also instructed that Plaintiff was not permitted to respond to the letter.  (Id.)

In opposing the Borough's motion for summary judgment, Plaintiff concedes that he received the January 30, 2009 letter from Police Captain Richard Sarlo. (Pl.'s Br. in Opp'n to Def.'s

Mot. for Summ. J. [Doc. No. 58] (hereinafter, "Pl.'s Opp'n"), 3.)
Despite having received this letter, Plaintiff subsequently
initiated several communications with the Department.  First,
Plaintiff contacted Police Chief Garrity by telephone and left a
"detailed harassing voice mail message" on February 10, 2009.
(Prince Aff. ¶ 8; see also Complaint-Warrant 2009-000099, Ex. C
to Prince Aff. [Doc. No. 57-2] 1.)  Then, on March 26, 2009,
Plaintiff sent Lieutenant Prince an email threatening to file a
civil law suit against the Department.  (Prince Aff. ¶ 9; see
also Complaint-Summons 2009-000181, Ex. D to Prince Aff. [Doc.
No. 57-2] 2.)  Several days later on March 30, 2009, Plaintiff
left two more voice mails for Chief Garrity which used coarse and
offensive language.  (Prince Aff. ¶ 9; see also Complaint-Summons
2009-000180, Ex. D to Prince Aff. [Doc. No. 57-2] 1.)
Approximately two days later, Plaintiff, yet again, contacted a
member of the Department, Patrolman Michael Taulane, by
telephone.  (Prince Aff. ¶ 9; see also Complaint-Summons 2009-
000182, Ex. D to Prince Aff. [Doc. No. 57-2] 3.)

     As a result of these communications, a Complaint-Warrant and
three Complaint-Summonses for Harassment under the New Jersey
Criminal Code, N.J. Stat. Ann. 2C:33-4,[6] were issued against

---

6.  New Jersey Statute 2C:33-4 provides in pertinent part:

      Except as provided in subsection e., a person
      commits a petty disorderly persons offense if, with
      purpose to harass another, he:

Plaintiff and dates were set for court appearances on these charges.  (See, e.g., Complaint-Warrant 2009-000099, Ex. C to Prince Aff. [Doc. No. 57-2] 1; Complaint-Summons 2009-000181, Ex. D to Prince Aff. [Doc. No. 57-2] 2; Complaint-Summons 2009-000180, Ex. D to Prince Aff. [Doc. No. 57-2] 1; Complaint-Summons 2009-000182, Ex. D to Prince Aff. [Doc. No. 57-2] 3.)  Upon learning that Plaintiff was being detained by the Camden County Sheriff's Office at the Camden County Hall of Justice on April 7, 2009, Lieutenant Prince served Plaintiff with the four harassment complaints issued in the Spring of 2009 and advised Plaintiff that he was to appear on April 15, 2009 at the Merchantville Municipal Court to answer these charges.[7]  (Prince Aff. ¶ 10.)

    Approximately a week later, Plaintiff appeared before the

_____

            a.    Makes, or causes to be made, a
                  communication or communications
                  anonymously or at extremely inconvenient
                  hours, or in offensively coarse language,
                  or any other manner likely to cause
                  annoyance or alarm; [or]

            c.    Engages in any other course of alarming
                  conduct or of repeatedly committed acts
                  with purpose to alarm or seriously annoy
                  such other person.

7.  The Prince Affidavit indicates that Plaintiff was advised to appear on April 15, 2011.  This appears to be a typographical error as the municipal court hearing transcript attached to the Borough's motion demonstrates that the hearing was on April 15, 2009.  It is unclear from the record why these harassment complaints against Plaintiff were handled in the municipal court in Merchantville as opposed to Collingswood.

Honorable Oren R. Thomas, III, a Judge of the Municipal Court of New Jersey, for a hearing on the harassment complaints set forth above.  (Tr. of Hearing, Ex. E to Prince Aff. [Doc. No. 57-2] 3:1-17.)  At that hearing, Plaintiff first acknowledged that he was served with the four complaints and submitted to the jurisdiction of the municipal court.  (Id. at 5:1-6.)  The municipal prosecutor offered Plaintiff a plea agreement whereby: (1) Plaintiff would enter a guilty plea to Collingswood Borough Ordinance 324 for a violation of peace and good order with respect to one of the harassment complaints; (2) that the other three harassment complaints would be dismissed; (3) that Plaintiff would pay a $100 fine plus court costs; and (4) that a no contact order would be entered barring Plaintiff from contacting any member of the Department by telephone, email, or any other manner.  (Id. at 5:12-19.)

The following colloquy then occurred between Plaintiff and Judge Thomas:

| | |
|---|---|
| The Court: | Okay.  Mr. McGann, do you understand what the prosecutor here has said with respect to this issue? |
| Mr.McGann: | Yes, Your Honor, I do. |
| The Court: | Do you have any questions before we proceed? |
| Mr. McGann: | No, Your Honor. |
| The Court: | Okay.  What is your plea to the amended charge of Collingswood Borough ordinance 324, violation ... [for] general peace and good order. |
| ... | |
| The Court: | Do you understand that charge? |
| Mr. McGann: | Yes, Your Honor. |

14

```
The Court:      Okay.  And your plea to that amended
                charge is?
Mr. McGann:     Guilty, sir.
The Court:      Okay.
```

(Id. at 6:3-20.)

Judge Thomas went on to question Plaintiff as follows:

Examination by the Court:

```
Q    Now, sir, did you, as the face of this
     complaint said, make some communications that
     would likely cause alarm to the person at the
     other end of the telephone call on February
     10, 2009?
A    Yes, Your Honor.
Q    Okay.  And in retrospect, you kind of regret
     doing that — making that call?
A    Yes, Your Honor.
Q    And you agree that in the future there will be
     no more calls, emails, communication of any
     kind?
A    No, Your Honor.
Q    No.
A    No, no contact.
Q    ["]Yes, Your Honor, I agree that that won't
     happen.["]
A    Yes, I agree.  Yes.
```

(Id. 6:21-7:12.)  Judge Thomas then entered a no contact order

which prohibited Plaintiff from having any communication with any

member of the Department or any public employee of the Borough.

(Id. 7:13-20) (entering order that Plaintiff "have no contact

with the Collingswood Police or any [B]orough employee by phone,

email, in person[, or] letter.)  At that time, the remaining

charges for harassment against Plaintiff were dismissed.  (Id. at

9:9-10.)

In direct violation of the no contact order entered by Judge

15

Thomas and contrary to the Department's January 30, 2009 letter, Plaintiff again contacted Police Chief Garrity on November 14, 2009 by email.[8]  (Prince Aff. ¶ 14.)  As a result of this contact, another Complaint-Summons for harassment was issued against Plaintiff.  (Id.; see also Complaint-Summons 2009-000729, Ex. F to Prince Aff. [Doc. No. 57-2] 1.)  Subsequently, a decision was made to forgo prosecution of Plaintiff for the final harassment Complaint-Summons resulting in its dismissal for lack of prosecution.  (Prince Aff. ¶ 15.)

### A. Malicious Prosecution

In the present motion for summary judgment, the Borough argues that Plaintiff's claim for malicious prosecution regarding the harassment complaints issued against him fails because these proceedings did not terminate in Plaintiff's favor.  In the Third Circuit, a constitutional claim for malicious prosecution pursuant to Section 1983 and New Jersey law requires a plaintiff to establish four elements: "that the defendant (1) instituted proceedings (2) without probable cause ... (3) with legal malice; and (4) the proceedings terminated in favor of the plaintiff." Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 248 (3d Cir. 2001) (citing Lightning Lube v. Witco Corp., 4 F.3d 1153, 1197 (3d Cir. 1993)).  A plaintiff's "[f]ailure to prove any one

---

8.  Plaintiff specifically concedes in his amended complaint that he contacted Chief Garrity on November 14, 2009.  (Pl.'s Am. Compl. ¶ 12.)

of these four elements denies the plaintiff a cause of action [for malicious prosecution]." Trabal, 269 F.3d at 248 (citing Fleming v. United Parcel Serv., 642 A.2d 1029, 1030 (N.J. Super. Ct. App. Div. 1992), cert. denied, 516 U.S. 847 (1995)).

In order to satisfy the favorable termination element, the Third Circuit requires that a prior criminal case have been disposed of in a way that indicates the innocence of the accused. Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002); see also Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000) (noting that "a plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution."). Accordingly, "a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner [that is] not indicative of the innocence of the accused." Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009).

Generally, a favorable termination includes: "(a) a discharge by a magistrate at a preliminary hearing, or (b) the refusal of a grand jury to indict, or (c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) an acquittal, or (f) a final order in favor of the accused by a trial or appellate court." Donahue, 280 F.3d at 383 (citation omitted). However, under New Jersey law "it is well settled that in circumstances where a criminal charge is withdrawn or a prosecution is

17

abandoned pursuant to an agreement or compromise with the accused, the termination is viewed as indecisive and insufficient to support a cause of action for malicious prosecution."  Gordon v. Berkeley Township Police, No. 10-5061, 2011 WL 2580473, at *5 (D.N.J. June 27, 2011) (citing Mondrow v. Selwyn, 412 A.2d 447, 450 (N.J. Super. Ct. App. Div. 1980); Thomas v. N.J. Inst. of Tech., 427 A.2d 1142, 1143 (N.J. Super. Ct. 1981)).

Thus, even "[i]f the prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong necessary to maintain a malicious prosecution claim under § 1983."  Pittman v. Metuchen Police Dep't, No. 08-2372, 2010 WL 4025692, at *7 (D.N.J. Oct. 13, 2010) (citing Taylor v. Winters, 115 F. App'x 549, 552 (3d Cir. 2004)). Similarly, a municipal court's dismissal of charges for lack of prosecution is not dispositive of the accused's innocence, and therefore does not constitute a favorable termination for purposes of a malicious prosecution claim.  Makboul v. Port Authority of New York and New Jersey, No. 09-3540, 2011 WL 4594224, at *6  (D.N.J. Sept. 29, 2011) (granting summary judgment on malicious prosecution claim because a municipal court dismissal for lack of prosecution based on defendant officers' failure to appear did not satisfy the favorable termination element because such a dismissal was not indicative of plaintiff's innocence).

18

Here, the Borough is entitled to summary judgment on Plaintiff's malicious prosecution claim because the Borough has met is burden of demonstrating that there is an absence of evidence to support this claim because none of the five harassment complaints issued against Plaintiff were terminated in his favor.  Therefore, because Plaintiff cannot make a showing sufficient to establish the existence of every element of his malicious prosecution claim, a claim for which he bears the burden of proof at trial, the Borough is entitled to summary judgment as a matter of law.  See Cooper, 418 F. App'x at 58.

With respect to the four harassment complaints issued between February and April 2009, the transcript from the April 15, 2009 municipal court hearing conclusively demonstrates that these criminal proceedings did not terminate in Plaintiff's favor.  (See generally Tr. of Hearing, Ex. E to Prince Aff. [Doc. No. 57-2].)  Specifically, Plaintiff admitted at the hearing that he "ma[d]e some communications that would likely cause alarm to the person at the other end of the telephone call on February 10, 2009" and that he regretted the action that he took. (Id. at 6:22-7:4.)  At the hearing, Plaintiff also acknowledged that he understood the plea arrangement offered by the prosecutor and did not have any questions for Judge Thomas prior to entering his plea.  (Id. at 6:3-9.)  Then, Plaintiff pled guilty to an amended charge for a violation of Collingswood Borough Ordinance 324 and

19

the prosecutor dropped the remaining charges against Plaintiff. (Id. at 6:10-20.)

The entrance of Plaintiff's guilty plea to the amended charge of an ordinance violation and his admission to Judge Thomas that he made communications to a member of the Department likely to cause alarm are dispositive here and clearly cannot be considered indicative of Plaintiff's innocence on the underlying charges.  Thus, the proceedings regarding these harassment complaints did not terminate in favor of Plaintiff.  See Mondrow v. Selwyn, 412 A.2d 447, 450 (N.J. Super. Ct. App. Div. 1980) ("Having compromised for his peace in the criminal proceeding, the accused may not later contend that the proceedings terminated in his favor.")  Additionally, the fact that the remaining charges against Plaintiff were dropped as part of the plea is also insufficient to qualify as a favorable termination for purposes of a malicious prosecution claim.  See Pittman, 2010 WL 4025692, at *7; Taylor, 115 F. App'x at 552.

Similarly, the November 2009 harassment complaint did not result in a favorable termination for Plaintiff.  As set forth in the Prince Affidavit, the Complaint-Summons for harassment issued in November 2009 was ultimately dismissed in municipal court for lack of prosecution because no one from the Department attended

the hearing regarding that final Complaint-Summons.[9]  (Prince
Aff. ¶ 15.)  However, this dismissal for lack of prosecution is
also inadequate to constitute a favorable termination for
purposes of Plaintiff's malicious prosecution claim because it
does not indicate Plaintiff is innocent of the underlying
charges.  Makboul, 2011 WL 4594224, at *6.  Accordingly, the
Borough has demonstrated that no genuine issue of material fact
exists and the Borough is entitled to judgment as a matter of law
on the malicious prosecution claim because Plaintiff cannot
identify any facts or affirmative evidence to demonstrate that
the criminal prosecutions terminated in his favor with respect to
any of the harassment complaints issued against him.

**B.   False Arrest and False Imprisonment**

Plaintiff's Section 1983 claims for false arrest and false
imprisonment[10] also stem from the issuance of the harassment

---

9.  In the amended complaint, Plaintiff specifically recognizes
that this final harassment complaint was dismissed because
"Prince never showed up for court[.]" (Pl.'s Am. Compl. ¶ 17.)
In opposition to the Borough's motion for summary judgment,
however, Plaintiff argues that this particular criminal
proceeding ended in his favor because "the Defendant did not show
up for court[.]"  (Pl.'s Opp'n 3.)  Plaintiff appears to argue
that the Borough "realized that [it] had no case and could not
find Plaintiff guilty" such that no one appeared on these charges
and they were dismissed.  (Id.)  However, these assertions by
Plaintiff are based on Plaintiff's own speculation and do not
constitute affirmative evidence contradicting that offered by the
Borough.

10.  The Borough apparently recognizes that Plaintiff is
asserting claims for both false arrest and false imprisonment,
(see Br. in Supp. of Mot. for Summ. J. [Doc. No. 57-4] 4), and

complaints described supra.  To successfully state a Fourth

Amendment claim for false arrest, a plaintiff must prove: (1)

that there was an arrest; and 2) that the arrest was made without

probable cause.  See Pollock v. City of Philadelphia, 403 F.

App'x 664, 669 (3d Cir. 2010) ("To establish a Fourth Amendment

claim for false arrest, [a plaintiff] must show that [the

defendant] lacked probable cause to arrest him.") (citing Dowling

v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)).

Additionally, a claim for false imprisonment derives from a claim

for false arrest such that where the police lack probable cause

to make an arrest, the arrestee may also maintain a Section 1983

claim for false imprisonment based on a detention pursuant to

that arrest.  Adams v. Selhorst, 449 F. App'x 198, 201 (3d Cir.

2011) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d

Cir. 1995)).

     "'Probable cause exists whenever reasonably trustworthy

information or circumstances within a police officer's knowledge

are sufficient to warrant a person of reasonable caution to

conclude that an offense has been committed by the person being

arrested.'"  Pollack, 403 F. App'x at 668 (citing United States

---

seeks summary judgment on those claims.  It appears to the Court
though that the Borough has combined the legal arguments for
these claims under a single legal analysis regarding the
malicious prosecution claim.  (See id.)  However, the Court notes
that a separate legal analysis is required for these additional
claims.

v. Myers, 308 F.3d 251, 255 (3d Cir. 2002)).  Moreover, "'[t]he validity of an arrest is determined by the law of the state where the arrest occurred.'"  Pollack, 403 F. App'x at 668 (citing Myers, 308 F.3d at 255).  The issue of whether there is probable cause is generally a question for the jury, but "a district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to plaintiff, reasonably would not support a contrary factual finding[.]"  Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).

The Court must also consider here the Supreme Court's opinion in Heck v. Humphrey, 512 U.S. 477, 486 (1994).  In Heck, the United States Supreme Court explained that the "principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments [also] applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement[.]"  Pursuant to Heck, "[a] claim for damages bearing that relationship to a conviction or sentence that has not been ... invalidated is not cognizable under § 1983."  Id. at 487. Therefore, with respect to Plaintiff's Section 1983 claims for false arrest and false imprisonment, the Court "must [also] consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff

23

can demonstrate that the conviction or sentence has already been invalidated."  In determining whether probable cause exists, the Court, in accordance with Heck, will not make inferences in Plaintiff's favor that would necessarily negate the findings of the Merchantville Municipal Court.  See Ference v. Twp. of Hamilton, 538 F. Supp. 2d 785, 789 (D.N.J. 2008).

Here, Plaintiff contends that he was "wrongfully arrested" and the Borough violated his Fourth Amendment rights by having Plaintiff "handcuffed, searched, and seated inside of a holding cell, ... without probable cause or [a] warrant, with the purpose to deprive [Plaintiff] of liberty[.]" (Pl.'s Am. Compl. 4-5.) The Borough contends that Plaintiff was not arrested or imprisoned by the Borough with respect to any of the harassment complaints at issue, and that Plaintiff was merely served with four of these complaints while he was being held by the Camden County Sheriff's Office (or the Camden County Correctional Facility) on a unrelated offense.  (Br. in Supp. of Mot. for Summ. J. [Doc. No. 57-4] 4, n.1)

The Borough is entitled to summary judgment on Plaintiff's false arrest and false imprisonment claims for the following reasons.  As a threshold issue, the undisputed facts demonstrate that Plaintiff was not placed under arrest by the Borough with respect to any of the harassment complaints issued against him. In the amended complaint Plaintiff asserts that while at the Hall

24

of Justice in Camden awaiting a court appearance for violating a restraining order, members of the Camden County Sheriff's Department handcuffed and detained Plaintiff in a holding cell. (Pl.'s Am. Compl. ¶ 5.)  He also asserts that at this time, Lieutenant Prince advised Plaintiff that he was under arrest for harassment.  (Id.)

However, as detailed in the Prince Affidavit, while Plaintiff was being detained by the Camden County Sheriff's Office at the Hall of Justice, Plaintiff was merely served with the first four harassment complaints and advised that he was required to appear at the April 15, 2009 hearing on those charges in the Merchantville Municipal Court.  (Prince Aff. ¶ 10.)  At the summary judgment stage, Plaintiff cannot rest on the mere allegations made in the amended complaint that he was "arrested." See Saldana, 260 F.3d at 232.  Plaintiff is required to set forth specific facts by affidavit or otherwise to demonstrate that he was in fact placed under arrest with respect to these harassment complaints.  Plaintiff has failed to meet his burden to identify facts or evidence in support his alleged arrest beyond the allegations of his amended complaint.  Thus, Plaintiff cannot maintain a claim for false arrest.

Even if the Court assumes for purposes of this motion that Plaintiff could establish that he was arrested with regard to these harassment complaints, Plaintiff's false arrest claim still

fails because Plaintiff cannot demonstrate that his alleged arrest was made without probable cause.  As the Third Circuit has previously recognized, "a guilty plea — even one for a lesser offense — does not permit a later assertion of no probable cause."  Walker v. Clearfield Cnty. Dist. Attorney, 413 F. App'x 481, 483-84 (3d Cir. 2011) (citing Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002)).  Here, Plaintiff's guilty plea to the amended charge under Collingswood Borough Ordinance 324 — which arose out of his communications with the Department and the initial harassment complaints — directly contradicts Plaintiff's assertion that no probable cause existed for his alleged arrest. Accordingly, because Plaintiff cannot demonstrate the absence of probable cause, an essential element for his false arrest claim, summary judgment must be entered in favor of the Borough on this false arrest claim.[11]  See also Martinez v. New Jersey, No. 2:11-cv-02223, 2012 WL 2116407, at *4 (D.N.J. June 11, 2012) (finding that plaintiff did not have a viable claim for false arrest as a matter of law in light of his guilty plea to a municipal ordinance violation for disorderly conduct which was a reduction from the original criminal charges of aggravated assault).

Moreover, even assuming that Plaintiff could prove the

─────────────────────

11.  Because Plaintiff's false imprisonment claim is derivative of his false arrest claim, summary judgment must also be entered in favor of the Borough on this claim for the same reasons articulated with respect to false arrest.

absence of probable cause, his claims for false arrest and false imprisonment would still fail because a favorable finding on these claims would necessarily imply the invalidity of Plaintiff's municipal court guilty plea.  See Walker, 413 F. App'x at 484 (finding that plaintiff's "claim would fail even if he could allege the absence of probable cause despite his guilty plea" in light of Heck v. Humphrey).

The essence of Plaintiff's claims is that the Borough lacked probable cause to arrest Plaintiff for harassment with respect to his communications with members of the Department.  Assuming Plaintiff proved these allegations at trial, it would necessarily imply that Plaintiff's conviction and guilty plea to the later amended charge under Collingswood Borough Ordinance 324 was invalid.  Under these circumstances, Plaintiff's Section 1983 claims for false arrest and false imprisonment clearly run afoul of Heck and summary judgment must be entered in favor of the Borough.[12]  See Walker, 413 F. App'x at 484; see also Ference, 538 F. Supp. 2d at 789-90 (explaining that a finding of guilt for "violating a municipal ordinance does not affect the analysis

---

12.  To the extent Plaintiff argues that he was coerced or threatened in some manner into making this guilty plea, this argument addresses the merits of the criminal charge itself and should have been raised before the Merchantville Municipal Court or on an appeal from Plaintiff's criminal conviction entered on that guilty plea.  This Court may not consider the merits of Plaintiff's arguments against a guilty plea entered before another court in this Section 1983 action.

under Heck" because prosecutions under municipal ordinances in New Jersey are criminal in nature and require proof beyond a reasonable doubt, and noting that the rule in Heck barring Section 1983 claims that impugn an underlying conviction unless there is termination of the criminal proceeding in favor of the accused applies to convictions for violating municipal ordinances).

**V.    <u>CONCLUSION</u>**

For the foregoing reasons, Defendant Borough of Collingswood's motion for summary judgment is granted, and Defendant Borough of Collingswood is terminated as a Defendant in this action.  An Order consistent with this Opinion will be entered.

Dated: December 17, 2012          /s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

28